America v. DFM United States U.S. Division of Defense May it please the Court. My name is David Bell and I represent Terrence Bell and the matter before this Court. I would like to reserve three minutes for rebuttal. Thank you. This is a case regarding the ever-changing landscape of the interpretation of the Armed Career Criminal Act and, quite frankly, common sense. This Court should find that Terrence Bell's designation as an armed career criminal should be reversed for three reasons. First, under the case of United States v. DeCamp, this statute, the Tennessee Aggravated Assault Statute, specifically this particular section, Section C, is overly broad, non-generic and indivisible and, as such, the modified categorical approach cannot be employed in evaluating it. Did you say indivisible or divisible? I just didn't hear you. Indivisible, Your Honor. Indivisible. Yes, Your Honor. Second, this statute includes elements that do not satisfy the requirements of a violent felony under the Armed Career Criminal Act and the cases that have interpreted it. And third, that even under the modified categorical approach, there are no Shepard documents to satisfy this inquiry. Under the DeCamp case. It looks divisible to me. There are all these different categories. Your Honor, it sort of depends on what you're looking at. I'm looking at the second part of Subsection C there. The one that starts, excuse me, Your Honor. Okay, not after the restraining order, but what he does after a restraining order. Yes, Your Honor. Causes or attempts to cause bodily injury or commits or attempts to commit an assault. Oh, that's part of the first part. And what you do is you commit an assault against an individual. No, it's the last two lines, I guess. Intentionally and knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault. Those are four different things, right? Your Honor, they are four different things. Why isn't it divisible for those four? Well, Your Honor, there are a couple of problems here. First of all, those four are in one part of the last part of this section of the aggravated assault statute. They're not demarcated out except for in this sentence. They don't have to be demarcated. That's absolutely right, Your Honor. But one of the other problems involved is that you see that it says that in the last part commits or attempts to commit an assault against such individual or individuals. Now again, this encompasses the language of assault. So now we have an entirely another statute by reference that is brought in. And that is included here in this section of the statute. So what you would have to find is that not only is this statute divisible, but the other statute is divisible as well. And so a court shall go through, divide up which element was satisfied here under the aggravated assault statute, then go through possibly the assault statute and find which element was satisfied under the assault statute. If we did that, what would the Shepard documents show? The Shepard documents would show that Mr. Bell committed an assault against an individual. So of the four categories, before you get to the definition, you're saying the Shepard documents would put you in to commit an assault? Yes. And then we have an entire... You have the three down there. Which one of the three definitional terms would the Shepard documents put you in? Under assault? That's where I thought we were. Yes. Well, I'm going now from the aggravated assault statute to the irregular assault statute. The Shepard documents... The idea was that that was incorporated by reference. That's what you just said. That's right, Your Honor. And this is part of the reason why it becomes confusing with the divisibility of it. But the Shepard documents... It doesn't look confusing to me. It looks clear. You've got four things you can do, and one of them has three subparts. Okay. Your Honor, under the Shepard documents that were presented, and if you look at both our brief and also the response brief, at the district court level, the Shepard documents that were submitted included the indictment, the judgment that showed that the indictment was pled guilty to, and also a plea colloquy, which actually was the wrong plea colloquy. So the only Shepard documents that we can look at are the indictment and the judgment? That's right, Your Honor. And what do they show? Well, Your Honor, I do want to make sure that we don't believe this court should be looking at... Right, but I said that we could. Yes, Your Honor. If Your Honor does. Hypothetically, if we were looking at Shepard documents, the only Shepard documents that are in the record that are relevant to this case are the indictment and the judgment. That's right, Your Honor. And what do they show? They show, quite frankly, Your Honor, that Mr. Bell committed an assault. It does not demarcate... They don't distinguish between one of these. It does not, Your Honor. So that forces us to see whether, if the one that it went under was three, was a crime of violence. That's right, Your Honor. That same statute... So when we go through all that DeCamp analysis, I don't want to speak for my colleagues, it as incorporated in the fourth of the four things that you could do under 102C is a crime of violence. That's right, Your Honor. That's a statute... Why isn't it a crime of violence? Well, Your Honor, it is a statute, just to use the state of Tennessee and the case that was cited by the government, State v. Smiley, that includes such offensive or provocative contact including kissing without one's consent, cutting one's hair without consent, or spitting in one's face. That wouldn't be enough by itself, you would say? No, Your Honor. What about in the context of a restraining order? That's my bottom line question. Yes, Your Honor. Why doesn't the restraining order make the difference? Your Honor, one of the things the United States talked about in the Sykes case, where it was talking about intentional vehicular flight, was the idea that there has to be a serious potential risk of physical injury to another. The government obviously cites that repeatedly when it is trying to convince this court under the residual clause that it should find that this sort of conduct qualifies. The problem is, what this court would have to find is that an individual while under a restraining order that cut someone's hair without consent was creating a serious risk of physical injury. Why isn't that the case? That's my question. Your Honor, cutting someone's hair while under a restraining order doesn't create a serious risk of physical injury. Spitting in someone's face creates... A risk that the victim who is spit upon will react and that there will then be an escalation and there will be a risk of serious physical injury somehow happening. Most people don't like to be spit on, especially by somebody who is subject to a restraining order. No, Your Honor. There are levels. When this court in the Martinez-Ortega case talked about this aggravated assault statute and talked about this particular section, it talked about how this was not your typical generic aggravated assault statute because of these particular types of ways that the statute can be violated. This offensive contact. I'm talking about this question of provoking violence, an action that is going to provoke violence such as spitting in the face. Your Honor, spitting in someone's face is just one way. We're talking about a range of different ways. Well, cutting somebody's hair against their will. And most people don't want to have their hair cut by somebody running up and cutting their hair. And most people don't want to be kissed by somebody that they don't want to be kissed by. I mean, it's sort of self-evident. Especially somebody that they've got a restraining order against. Yes, Your Honor. There are many actions that most people do not want a person with a restraining order to commit against them. But they might not mind so much. If you came up and kissed me, I might be offended. Yes. But if I had a restraining order against you, wouldn't that be qualitatively different? Your Honor, it will be. It is different. But it doesn't rise to the level of serious potential risk of physical injury. I'll cite the case of Baguette. Well, if I have the restraining order, I'm anticipating that you won't do it. That's the difference, I suppose, between somebody spitting in the face, where there's not been a restraining order. And doing it after there's been a restraining order. Yes, you are anticipating that a person would not do it with a restraining order. You would be anticipating a person wouldn't unwontedly kiss you or unwontedly cut your hair or spit in your face also. But this is under a restraining order. You also would be anticipating that that would not happen. But the problem is that when we look back at the Supreme Court and this Circuit's cases with regards to sort of the common sense idea of what a violent felony is and what creates serious potential risk, looking at the Baguette case, which my opponent cited, is a great place to start. DUI, where an individual is committing violent DUI, excuse me, repeated DUI, aggravated DUI, felony DUI, it was the man's third, fourth, and fifth offenses. That creates a serious potential risk of physical injury, arguably. Why is this different from our Johnson case, which involved stalking? Well, Your Honor, the stalking case, the reason why is because that stalking case is a case where you have an individual with repeated deliberate conduct according to the Johnson statutes, excuse me, according to the statute at issue in Johnson. This can be satisfied by one action, okay? One action where a person is simply offended, offensive contact, that's it. And as a result, instead of this sort of repeated action over and over and over again, like in the stalking case, in this case, we're talking about a litany of ways to violate the statute. But it's in the context of the person having been enjoined or restrained by an order, which is this restraining order, in other words. So there is a history of some kind of improper action which had resulted in a court order against the person. That is true. There is a history. There has to have been at least one reason why that protective order must have been signed. Do we know what kind of protective orders are covered by this statute? Is it all domestic relations, or are there other protective orders that are covered? I think there are a number of different orders that are covered, but it's... Where would we go to find out the answer to that? You could go to the Tennessee statute, and then you would go back to the definition of protective order to look in the Tennessee code and find, because remember, this is restrained by an order, diversion, or probation agreement of a court of competent jurisdiction. So there are multiple ways that an individual could have, that an order could have been put in place. One question, it's another question, sorry to take you on, but I see your yellow light is on. In the aggravated assault statute, there's, when we get down towards the end, the key words that Judge Rogers was focusing on, it says, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault. Does the intentionally or knowingly modify all of those verbs, or does it only modify the first one, attempts to cause or causes bodily injury? See my time is up, may I answer that question? Yes. Thank you. We believe it only modifies the first two. Part of the reason we believe that is if you look at the assault statute that it refers to, that gives its own set of very specific mens rea elements. Intentionally knowingly or recklessly in section one, intentionally or knowingly in section two, intentionally or knowingly in section three. So we have a number of different ways that the mens rea is required under the assault. Finding that the aggravated assault statute intended to modify that without specifically listing that out or stating that, seems to be reading something into the statute that simply is not there. What difference does it make if sub three says intentionally or knowingly? Well, you're right, your honor, but I think part of the problem. We could argue about whether the intentionally or knowingly in one statute applies to commit an assault or the intentionally or knowingly in the other one does, but it doesn't make any difference, does it? Well, if we get into section A1 where we're talking about recklessly, yes, but then when you talk about A3. But I thought your whole idea here was that it was three. Well, your honor, my argument is not that it's three. It's not that it's one. My argument is that it can be violated in multiple ways that don't qualify as a violent felon. So could it be violent? Could your client's conviction be under assault one? Your honor, just looking at the conviction, yes. But if you look, if the court goes to the Shepard documents, there was, it did state knowingly assault. So with what stated? The indictment stated knowingly assault. The indictment stated knowingly assault? Yes, your honor. There's no avoiding that. Thank you. Thank you. Good morning. Excuse me. I'm going to please the court. Edward Stanton on the behalf of the United States. Judge Rogers, I think you hit it on the nail when you said the restraining order in this case makes the difference. Could I ask ahead of time, do you agree that the Shepard documents don't tell us whether sub one, two, or three apply here? I just want to ask that preliminary issue. I think it provides guidance. I actually think it does, your honor. Which one does it tell us was the basis for the conviction? By it, I mean Shepard documents that are in the record. The indictment states that the defendant unlawfully and knowingly, having after been enjoined in an order of General Sessions Criminal Court, a court of competent jurisdiction, from any committing an assault against Montana Mickens, commit an assault against the said Montana Mickens in violation of 39-13-102. I can see how that makes clear which of the four that are part of 102C is at issue, but I don't see how that determines which of the definitions of that fourth part of 102C was the basis for the prior conviction. Is my question clear? I believe it is, your honor. What do the Shepard documents tell us about whether one, two, or three was the basis for the prior conviction, or do they? I'm not sure that they do. So if they don't, which you're conceding now, I take it, and are agreeing, I don't want is not a crime of violence under the statute, which takes us down to three, which seems to be, to me at least, the least likely to be a crime of violence, and that gets you to where you started, which is whether physical contact that's extremely offensive or provocative in light of a restraining order is a crime of violence. Is that right? Is that why we're there? I believe, your honor, when the district court looked at the Shepard documents, he considered that. And under, whether it's Sykes 3913-102C, any violation is always going to be an intentional annoying crime. I just don't understand how that's answering my question. Okay. Want me to try again? Yes, sir. All right. You've got 102C. It's got four ways in which you can commit it. Arguably, it's divisible those four ways. I think your brief even says that. That's correct, your honor. Okay. And the fourth way is commit an assault. That's all it says, commit an assault. And that commit an assault is defined in the next, where is it? 101A. 101A. Thank you. It's the previous section of the statute, right? And it's got 1, 2, 3 in it. Now either our analysis is, we've got to look and see whether any one of those could be not a crime of violence, in which case you don't get the, the ACCA doesn't apply, or the Shepard documents tell us which one of those was the basis for the crime, and we'll look at that one only. And I guess you're saying the Shepard documents don't tell us whether it's 1, 2, or 3. But then I thought you were saying it does tell us whether it's 1, 2, or 3. I believe it's the latter, your honor. It does tell us it's... Which one does it tell us it is, then? And how does it tell us that? By it, I mean Shepard documents. The Shepard documents tell us that he was convicted under 1, or under 2, or under 3. In this case, it doesn't, your honor. It doesn't? It doesn't. So if the Shepard documents don't tell us, then you've got to show that none of these three is categorically not a crime of violence, right, under Begay and all those cases. That's what you've got to do, right? And it seems to me that the hardest one to show us, or the likeliest example of them is number 3, but I guess you could argue about number 1 as well. And that's what gets us to where you start. I'm just trying to lay the groundwork for where you started your argument. Yes, your honor. Does that make sense? I'm following you, your honor. I believe that the Shepard documents is under the categorical modified approach. In this case, the government would submit that this act of violence, this aggravated inactive violence under the residual clause of the ACCA. And so notwithstanding, and your point's well taken, your honor, with regard to the Shepard documents, before we even get to the Shepard documents, it's the government's position that you don't have to get there, because in and of itself, it is certainly under Begay and Sykes' conduct, when applied, that it creates a possibility of confrontation that creates the risk of serious physical injury. That's just saying that all of the three possibilities under attempt are categorically crimes of violence regardless of... That's correct. That's the government's position. All right. So, well, that still gets you to the question of whether this extremely offensive or provocative conduct would amount to an ACCA violation. You agree you'd have to argue that, correct? That's absolutely correct, your honor. I would agree with you. So even though we may say it differently, we're all coming to the conclusion that you've got to show at least that doing this is or is not a crime of violence, right? By it, I'm now talking about extremely offensive or provocative conduct in light of a restraining order. That's correct, your honor, and it goes back to the restraining order itself. If you follow... So your argument is that the restraining order is what makes a difference? The restraint, absolutely. The restraining order is what heightens this. Even if all they're doing is spitting or cutting hair or kissing? Absolutely. Even if all they're doing is spitting or cutting hair and... It's more likely in a restraining order you're going to have kissing. Somebody's infatuated with somebody and there's a restraining order to stop bothering or stalking them or something like that, and they go up and they're infatuated and they go and kiss the person. Is that a crime of violence? Absolutely. If it is in violation of a restraining order, a court has enjoined, and if you go back to look at how the restraining order comes into place, typically this is something where there's been conduct that the victim goes before court, sworn testimony, evidence, or what have you, your honor, to get this in line, and so obviously there has been some history or pose of danger or threat to be before the court. The court in turn provides the victim protection by issuing that restraining order. Does the restraining order have to be in the context of domestic violence or can it be in any context whatsoever? It doesn't have to just be in domestic violence. That's typically the case, your honor, but obviously sometimes there are items of minors. In fact, some of these restraining orders are issued ex parte. But going back to your point earlier, Judge Rogers, it's the restraining order absolutely that makes the difference. So whether it's spitting or blowing or cutting hair, when the court has stepped in and when the victim comes before the court and seeks protection by an order of protection and joining the defendant from doing these acts, it is heightened. That zone and that expectation of privacy and that expectation of safety has been violated. Not only that's been violated, but the order of the court has been violated. What's your strongest case to support that argument? I believe, your honor, that would be the James Court. Supreme Court case? That's correct, your honor. The James Court where the Supreme Court stated that attempted burglary, and that is what we cite in our brief, that this type of conduct under 102C is akin to burglary. But the Supreme Court stated that attempted burglary charge constituted a violent felony under the ACC's residual clause. The main risk of burglary arises, as the court said in James, from the possibility of confrontation between the offender and the victim. That's exactly what we have here, the possibility after restraining order is put in place. The risk is present whether or not the burglary is completed, said the James Court. And again, it's the potential risk that encompasses even mere possibilities of physical injuries. And if I could just give an example, maybe to try to illustrate this a little further, your honors, with regard to the restraining order and how this balances out with robbery, or burglary rather. If you have, for instance, an ex-boyfriend and breaks up with the ex-girlfriend, the ex-boyfriend goes over to the house if he wants to burglarize and says, I want my engagement ring back, and I want this and that, and I'm going to do this, I'm going to burglarize her household while she's at lunch or while she's away on vacation. Certainly, that rises to the level of potential risk encompassing mere possibilities of physical injuries. Well, with the restraining order, you take that same ex-boyfriend and that same ex-girlfriend and that ex-boyfriend with the restraining order in place goes over to that residence. That rises even more so to a level of expectation that that victim, that girlfriend, will say, hey, wait a minute, you are still showing up and the court has told you to stay away from me, to enjoin you from this type of conduct? So absolutely, this is where we start here, back to what you stated, it's the restraining order, notwithstanding the Shepard documents, but the restraining order that makes the difference in making this, indeed, a violent felony under the residual clause of the ACCA. Is there a problem that the assault statute 101A has the three parts and one of them, part one, says intentionally, knowingly, or recklessly causes bodily injury? I don't think that's an issue at all. In fact, I think that clarifies. Well, the recklessly, I thought that there are cases that say that recklessly causing bodily injury would not constitute a violent felony. And you're correct, Your Honor. But when we look at the, and there's no dispute by the defense that we're only focusing on 102C, and you're right, there are other subparts of 102 that actually use the recklessly standard, but we're only dealing with... 102C is the aggravated assault. And I thought at the end of 102C it says intentionally or knowingly attempts to cause or causes bodily injury. That's correct. And the Tennessee legislature left out... Oh, it left out recklessly there, and so if you're under assault one, you have to be intentionally or knowingly to be under 102C. That's correct, Your Honor. And until, unless the Tennessee legislature changes it, they could have easily put the to the restraining order, enjoining an individual from certain conduct that it appears the legislative intent was just that, that it would be intentional in knowing conduct. I would also cite, Your Honor, the Mitchell case that we provided with a 28J letter. And again, in that case, a violation of 102C is not only akin to burglary where it's risky for the reason that it can end in confrontation leading to violence, but it's also very similar to robbery. And it goes back to the illustration that I just gave, again, when there's no question that there will be a face-to-face confrontation, whether, again, it's cutting hair, whether it's spitting at someone, whereas the underlying burglary, you may or may not encounter someone when you go and try to steal the golf clubs out of a garage or go to your ex-girlfriend's house while she's on lunch break. But when the restraining order is in place, not only is it more so akin, 102C behavior and conduct to burglary, but as in Mitchell, just earlier this court, earlier this year, this ruling from this court, but it becomes more akin to burglary where, again, the face-to-face confrontation will be there and the possibility of physical harm is certainly at play. Do you think the Castleman case from the Supreme Court is relevant here? I really don't, Your Honor, except to the context of this type of conduct under domestic violence. When you mentioned or asked the question about domestic violence restraining orders, yes, it could come into place, but that's only under that umbrella. But otherwise, no, the statute is very clear, the men's rate of the statute is very clear, and it speaks for itself. So, Castleman, under only the domestic violence, and again, we can't, as death camp cells, we can't get into the underlying activity or conduct of the parties. And so, for that reason, I would say it's not necessarily relevant in this case. If there are no further questions, Your Honors, for these reasons, the United States would ask this court to affirm the lower court's ruling. Thank you. Thank you. May it please the court. It's interesting that the government should bring up the robbery case from the Mitchell case that came out recently. That was my case. I argued it. But also the burglary situation in the James case. Burglary is a situation where you're in a person's home or their business, and there's a possibility of confrontation there, and we understand that. And there's also an invasion into that home. Robbery is a situation where there's a threat or an act of violence trying to take someone's money. This is a case where a protective order, a restraining order, travels with a person. So they can be anywhere. They don't have to be in their house. There doesn't have to be any intent to take money to try, there doesn't have to be any threat of violence. There doesn't have to be any of those things. Why isn't it this idea of sort of the bubble around the person who has the benefit of a restraining order, that it's as if they are in a secure spot wherever they travel? Well, they are, Your Honor, and the person can be convicted of that crime. We understand that. But that doesn't mean it rises to the level of a crime of violence, excuse me, a violent felony for purposes of the Armed Career Criminal Act. Let's think about the ways that this can be violated in that bubble. You're not only talking about cutting a person's hair. You're not only talking about the possibility of unwanted kissing, as Judge Rogers seems to like to use as the example, and also which came from the Tennessee court. But all that has to happen is a reasonable finder, a jury, has to find that a reasonable person would have been offended in some way, that would have been offensive contact. So let's go down that road. What if an individual who's under a restraining order throws a paper airplane at someone? Why wouldn't that qualify? A jury could find it would. So what we're saying is, and there's other examples, shooting a rubber band, walking by someone and spilling water on them. Any of those are possibilities that a jury in the state of Tennessee could find is offensive contact under the statute. And yes, Your Honor, a jury could find that. I guess the trial court could overturn the conviction. But what we're doing- The problem here, Your Honor, is that what this court is doing is you're opening up a world of possibilities simply because a person is under a protective order of some kind. And as the government concedes, it doesn't even have to be a domestic violence protective order. It can be a number of different types of protective orders. Like what? Well, Your Honor, child custody was one that the government brought up. There have been a number of protective orders have been put in place regarding nuisances in Shelby County, Tennessee. Public nuisances, there are a lot of different ways that you can violate that law. But protective orders are put in- But how does the protective order work in the nuisance case? Well, people can't go back into certain clubs or can't open up certain clubs or can't do things like that. And they can be enjoined by a protective order as a result. I see my time has elapsed. Thank you. Thank you. Any further questions? Well, yeah, I haven't seen how going into a club is causing or attempting to cause bodily injury. Well, that's- Or attempting to commit an assault against an individual has to be what the restraint is. It's not any restraining order. It's a restraint against doing these particular things. It doesn't sound like walking into a club would qualify. And, Your Honor, if I could respond. Yes. And I think you're probably right. I think that one of the problems is that we have this statute that leaves it wide open. It becomes somewhat- It doesn't leave open the example that you suggested. Well, I'm trying to figure out every example that could possibly come into play under this statute. That's what's so difficult. Okay. I asked enough questions. Thank you. Thank you. Thank you very much. Thank you both for your argument. The case will be submitted.